DECISION
{¶ 1} Robert F. Jensen filed this action in mandamus, seeking a writ which compels the Industrial Commission of Ohio ("commission") to vacate its order permitting *Page 2 
Delphi Chasis Systems Division ("Delphi") to offset payments under a "special attrition program" against funds due for temporary total disability ("TTD") compensation.
 {¶ 2} In accord with Loc. R. 12, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision includes a recommendation that we grant the requested writ.
 {¶ 3} Delphi has filed objections to the magistrate's decision. Counsel for Jensen has filed a memorandum in response. Counsel for the commission has also filed a memorandum in response, asking for the requested writ but advocating different reasoning. The case is now before the court for review.
 {¶ 4} Delphi's "special attrition program" is a program designed to allow Delphi to reduce the number of its employees and thereby reduce its operating costs. Delphi made the program available before Jensen was injured. Jensen accepted Delphi's offer to participate in the program, a condition of which was that he was able to work and suffered no disability which would preclude him from doing his regularly assigned job. Jensen signed a form in which he acknowledged that he was not entitled to disability pay or benefits. Then, he was injured before the payments under the special attrition program began.
 {¶ 5} The payments under the special attrition program are not wages. The payments are payments to stop working until the employee reaches the 30 years of credited service necessary for retirement. Since the payments are not wages, they cannot be offset against TTD. *Page 3 
 {¶ 6} Delphi's objections are overruled. We adopt the findings of fact and conclusions of law contained in the magistrate's decision. As a result, we issue a writ of mandamus compelling the commission to vacate its order which granted Delphi an offset of its special attrition program payments against Jensen's TTD payments and compelling the commission to enter an order which grants Jensen's motion requesting that the offset be denied.
Objections overruled; writ granted.
 KLATT and FRENCH, JJ., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 7} In this original action, relator, Robert F. Jensen, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order permitting the self-insured employer, Delphi Chasis Systems *Page 5 
Division ("Delphi" or "employer"), to offset payments of temporary total disability ("TTD") compensation with the payments Delphi made to relator under a so-called "Special Attrition Program," and to enter an order prohibiting the offset.
Findings of Fact: {¶ 8} 1. The record contains Forms A and B relating to the "UAW-GM-Delphi Special Attrition Program" ("special attrition program") dated March 22, 2006. On June 22, 2006, relator executed Forms A and B relating to the special attrition program.
 {¶ 9} 2. On Form A, relator selected one of three options. The option relator selected states:
 Enter into a pre-retirement program under which I will remain on protected status, accumulate credited service and then retire the first of the month following the month that I attain thirty (30) years of credited service under the early voluntary provisions of The Delphi Hourly-Rate Employee Pension Plan [Article II, Section 2 (a)(3)] without any additional incentives. I understand that wages will be paid weekly on an hourly basis (2,080 hours per year) and will remain at that rate until thirty (30) years of credited service is accrued. I also understand that no additional vacation time will accrue and I will not be eligible for COLA. * * *
 {¶ 10} 3. Form A indicates that relator had 28 years of credited service and that his "Monthly Gross Pay" will be $2,850.
 {¶ 11} 4. Also on June 22, 2006, relator executed Form B which states in part:
 * * * I am able to work and suffer from no disability that would preclude me from doing my regularly assigned job. As such, I acknowledge that I am not entitled to disability pay or benefits. I acknowledge no prior representations, promises, or agreements relating to my employment or separation have been made by Delphi or the UAW which are contrary to this agreement and the provisions of the Special Attrition Program. My acceptance, as demonstrated by my signature below, constitutes the entire and only agreement between *Page 6 
me and Delphi regarding my employment or separation. I understand that, if I separate, I will not be eligible for recall to work or re-employment by Delphi[.] * * *
 {¶ 12} 5. On October 4, 2006, prior to the January 1, 2007 effective date for the payment of the monthly gross sum of $2,850 under the special attrition program, relator sustained an industrial injury while employed with Delphi.
 {¶ 13} 6. Following a January 4, 2007 hearing, a district hearing officer ("DHO") awarded TTD compensation.[1]
 {¶ 14} 7. By letter dated February 9, 2007, Delphi informed relator that TTD compensation for the period November 5 through December 31, 2006 was being paid less sickness and accident benefits. The letter further informed relator that TTD compensation beginning January 1, 2007 was being paid less the payments owing under the special attrition program. The letter indicated that the weekly TTD rate of $704 was being offset by $657.69 (the weekly payment under the special attrition program). Thus, beginning January 1, 2007, Delphi paid relator a weekly TTD sum of $46.31 ($704 — $657.69 = $46.31).
 {¶ 15} 8. On June 1, 2007, relator moved that Delphi be ordered to pay relator the full amount of TTD compensation awarded.
 {¶ 16} 9. Following an August 14, 2007 hearing, a DHO issued an order denying relator's June 1, 2007 motion. The DHO's order explains:
 The District Hearing Officer finds the injured worker has been employed with the employer of record for 28-years. The District Hearing Officer further finds the injured worker voluntarily accepted a pre-retirement program with the *Page 7 
employer of record. Under this agreement, the injured worker is to receive $2,850.00 in month gross pay beginning 01/01/2007; he also continues to accumulate seniority and he will retire with benefits once he reaches 30-years of seniority. Following the 10/04/2006 industrial injury, the self-insured employer paid the injured worker temporary total disability benefits from 10/05/2006 through 12/31/2006, less sickness and accident benefits. The District Hearing Officer further finds that the weekly wages are set in this claim at $704.00. The District Hearing Officer finds the injured worker is receiving a weekly pre-retirement wage in the amount of $657.69. Therefore, the District Hearing Officer finds that temporary total disability compensation is to be off-set by the amount the injured worker is receiving pursuant to the preretirement program, as the District Hearing Officer finds that this amount constitutes wages or pay, as noted on Form A of the Special Attrition Agreement, UAW-DELFI Plants.
 Accordingly, the C-86 motion, filed 06/01/2007, is denied in its entirety.
(Emphasis sic.)
 {¶ 17} 10. Relator and Delphi administratively appealed the DHO's order of August 14, 2007.
 {¶ 18} 11. In support of its appeal, Delphi, through counsel, submitted a memorandum. Quoting Ohio Adm. Code 123-5-20(C), Delphi claimed that TTD compensation was either precluded by payments under the special attrition program or that TTD compensation must be offset by the special attrition program payments. Delphi explained:
 Ohio law is clear, if a claimant is receiving wages on any basis, other than vacation pay, temporary total disability compensation cannot be paid. Under the Special Attrition plan Mr. Jenson [sic] remains an employee of Delphi and receives gross monthly wages of $2,850.00. His monthly wages are payment in lieu of compensation under Ohio Adm. Code 4123-5-20(C) and claimant is not entitled to temporary total disability compensation. In the alternative, *Page 8 
claimant is entitled to temporary total disability compensation to be set off by the amount of pre-retirement benefits.
 {¶ 19} 12. Following an October 30, 2007 hearing, a staff hearing officer ("SHO") issued an order stating that the DHO's order was being modified. The SHO's order explains:
 The Staff Hearing Officer finds as indicated in the District Hearing Officer's order that the claimant is requesting full payment of temporary total compensation in this matter and not an offset that is being promulgated by the self-insured employer.
 The Staff Hearing Officer finds as indicated in the District Hearing Officer's order that the claimant had accepted a voluntary pre-retirement program with the instant employer. The claimant was receiving prior [sic] to the injury date upon which this claim is predicated the sum of $2,850 a month in gross pay beginning on 1/01/2007. The agreement indicated that once the claimant reached 30 years of seniority in approximately two years, he would get his full retirement benefits.
 The Hearing Officer finds that the claimant was paid from 10/05/2006 through 12/31/2006 temporary total compensation less sickness and accident benefits. The claimant's average weekly wage was set at $704.
 At the present time the claimant is receiving pre-retirement wages in the amount of $657.69 and is getting approximately $43 in temporary total compensation to make up the balance to $704.
 The claimant's representative indicated that but for the injury upon which this claim is predicated, the claimant was willing to work after his retirement from the instant employer and therefore because he cannot due to the injuries that he sustained he is entitled to both temporary total compensation in the amount of $704 and the pre-retirement wages in the amount of $657.69.
 The Hearing Officer finds that the claimant has not submitted any documentation indicating that he had a valid job offer to *Page 9 
re-enter the workforce[.] [Therefore the Hearing Officer finds that the claimant has not submitted sufficient documentation to indicate that he is eligible for the payment of temporary total compensation plus the pre-retirement wages of $657.69. Therefore, based on the above, the Hearing Officer finds that the C-86 filed by the claimant requesting the payment of temporary total compensation in addition to the pre-retirement wages is denied.
 {¶ 20} 13. On December 4, 2007, another SHO mailed an order refusing further appeals.
 {¶ 21} 14. On January 17, 2008, relator, Robert F. Jensen, filed this mandamus action.
Conclusions of Law: {¶ 22} There is no authority supporting the offset of payments under the special attrition program against the TTD award. Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its order denying relator's June 1, 2007 motion, and to enter an order granting relator's motion.
 {¶ 23} R.C. 4123.56(A) states in part:
 If any compensation under this section has been paid for the same period or periods for which temporary nonoccupational accident and sickness insurance is or has been paid pursuant to an insurance policy or program to which the employer has made the entire contribution or payment for providing insurance or under a nonoccupational accident and sickness program fully funded by the employer, compensation paid under this section for the period or periods shall be paid only to the extent by which the payment or payments exceeds the amount of the nonoccupational insurance or program paid or payable. Offset of the compensation shall be made only upon the prior order of the bureau or industrial commission or agreement of the claimant.
 {¶ 24} Supplementing the statute, Ohio Adm. Code 4123-5-20(C) states: *Page 10 
 Where a claimant is entitled to vacation with pay, payment of wages for a vacation period during the period of temporary disability resulting from injury or occupational disease shall not be deemed an advancement nor shall such payment be applied to offset any compensation that is payable for that period of time.
 Where claimants are paid a regular salary during the period of disability on any other basis, for example, sick leave, payment of compensation for temporary disability, compensation cannot be paid so long as such regular salary or wages are paid, unless the claimant and the employer notify the bureau in writing that such salary or sick leave was paid as an advancement.
 {¶ 25} An injured worker who continues to receive his regular salary or wages from his employer during a period of TTD is not entitled to receive TTD compensation during the period he is receiving his regular salary or wages because he has suffered no loss of his wages or salary.State ex rel. Rubin v. Indus. Comm. (1938), 134 Ohio St. 12; State exrel. Bunch v. Indus. Comm. (1980), 62 Ohio St.2d 423 (citingRubin for the proposition that the purpose of TTD compensation is to compensate for the loss of earnings); State ex rel. City of Cincinnativ. Indus. Comm. (1988), 35 Ohio St.3d 234 (where the employer is indemnified by a third-party tortfeasor for its continued payment of regular wages during an injured employee's period of TTD, the payments constitute a loan or advancement against future compensation and, thus, did not bar TTD compensation for the same period).
 {¶ 26} Delphi cites Ohio Adm. Code 4123-5-20(C) and Rubin to support an offset against the TTD award. Clearly, those authorities provide Delphi no authority to offset the TTD award with payments under the special attrition program. *Page 11 
 {¶ 27} Analysis begins with the observation that both R.C. 4123.56(A) and the supplementing rule address entitlement to disability compensation under the workers' compensation laws of Ohio. The special attrition program does not. In fact, to be eligible for the special attrition program, the employee must certify, by signing Form B, that he is "able to work and suffer[s] from no disability." Clearly, payments under the special attrition program are not made to compensate for disability or to continue wages during a period of disability. Rather, relator's receipt of payments under the special attrition program are benefits received in exchange for relator's agreement to leave his employment at Delphi, something that Delphi apparently bargained for so that it can reduce its workforce.
 {¶ 28} While Form A refers to the payments as "wages," the payments are not "regular salary" or even regular wages within the meaning of Ohio Adm. Code 4123-5-20(C). The rule contemplates the scenario where an employer pays its employee his regular salary or wages, such as sick leave, because of his disability. Unlike the scenario contemplated by the rule, payments under the special attrition program are not made because of a disability.
 {¶ 29} Forms A and B of the special attrition program fail to address the situation that arose here where a Delphi employee was apparently eligible for the program, suffering no disability at the time he entered into the contract with his employer regarding his retirement. Clearly, nothing in the language of Forms A and B gives Delphi the authority to offset the payments made under the special attrition program against a workers' compensation award of any kind. *Page 12 
 {¶ 30} The Rubin case provides Delphi no authority to offset the TTD award with payments made under the special attrition program.
 {¶ 31} In Rubin, the employer continued to pay its employee his regular wages during the period of TTD following his industrial injury. The regular wages paid by the employer in Rubin during the period of disability were not payments separately bargained for by the employee under an employer-initiated labor-force reduction program, as is the situation here.
 {¶ 32} In Rubin, the employer voluntarily continued regular wages without obligation to do so. The Rubin court held that the injured worker suffered no loss of wages and, thus, was not entitled to compensation designed to replace loss of wages.
 {¶ 33} Here, relator points out that, under the special attrition program contract, he was free to obtain other full-time or part-time employment yet be paid the "wages" under the contract. (Relator's brief, at 7.) Delphi does not dispute relator's interpretation of the contract that he was indeed free to seek other employment while being paid by Delphi under the special attrition program. Thus, relator argues, in effect, that his receipt of the full amount of the TTD award does not constitute double recovery because his industrial injury now prevents him from exercising his right to obtain other employment. The magistrate agrees with relator's argument.
 {¶ 34} Apparently, relator, through counsel, presented a similar argument before the SHO at the October 30, 2007 hearing. In the SHO's order, the SHO notes that relator's representative indicated that "but for the injury * * * the claimant was willing to work after his retirement from the instant employer." The SHO rejected relator's *Page 13 
argument, explaining that "claimant has not submitted any documentation indicating that he had a valid job offer to reenter the workforce."
 {¶ 35} The SHO's explanation misses the mark. Relator's argument as to why Delphi is not entitled to an offset did not mandate that relator obtain a job offer.
 {¶ 36} Here, the commission claims that the SHO's finding that relator failed to obtain a job offer is, in effect, a finding that relator voluntarily abandoned the workforce by accepting the terms of the special attrition program. The commission's claim that it entered a finding of a voluntary workforce abandonment is clearly not supported by the language of the SHO's order nor by any other evidence in the record.
 {¶ 37} The self-insured employer did not argue administratively nor did it argue here in mandamus that relator had voluntarily abandoned the workforce by accepting the terms of the special attrition program. The commission simply misconstrues its own order.
 {¶ 38} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its order denying relator's June 1, 2007 motion, and to enter an order granting relator's motion.
[1] Unfortunately, the parties have failed to submit a copy of the DHO's order to the stipulated record. However, the DHO's order of January 4, 2007 is referenced in other stipulated documents of record. (See Stip. at 2, 13.) *Page 1